MANDY G. LEIGH (SBN 225748)
JAY T. JAMBECK (SBN 226018)
SARAH J. FAIRCHILD (SBN 238469)
**LEIGH LAW GROUP** also DBA EDULEGAL
870 Market Street, Suite 1157
San Francisco, CA 94102
Telephone: (415) 399-9155
Fax: (415) 795-3733
*Attorneys for Plaintiff: M.K.*

LOUIS A. LEONE, ESQ (SBN 099874)
KATHERINE A. ALBERTS (SBN 212825)
ASH R. MOHINDRU (SBN 254219)
**STUBBS AND LEONE**
2175 N. California Blvd., Suite 900
Walnut Creek, CA 94596
Telephone: (925) 974- 8600
Fax: (925) 974-8601
*Attorneys for Defendant AUHSD*

**FILED**

AUG 2 1 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| M.K., a minor, by and through his parents, B.K. and K.K.<br><br>Plaintiff,<br><br>vs.<br><br>ACALANES UNION HIGH SCHOOL DISTRICT,<br><br>Defendant. | Case Number: C 13-02083-JST<br><br>JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER |

The parties to the above-entitled action jointly submit this JOINT CASE

MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All

Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-9.

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 1. Jurisdiction & Service

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding persona jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

a)  This Court has **jurisdiction** over the subject matter for the claims in this complaint pursuant to 28 U.S.C. §1331, 20 U.S.C. §§ 1415(i).

b)  **No issues exist regarding personal jurisdiction or venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant Acalanes Union High School District is a resident of the Northern District of California or is considered a resident of this District for purposes of venue.

c) *No parties remain to be served.*

## 2. Facts

This matter involves a dispute over whether or not M.K., a student with ADHD is eligible for special education under the IDEA.[1]  M.K. alleges that his ADHD qualifies him under the federal IDEA category of Other Health Impairment.

M.K. first began attending school in the Acalanes School District as a freshman, having attended Walnut Creek School District, a feeder district, from kindergarten through 8th grade.  In

---

[1] Congress enacted IDEA in 1970 to ensure that all children with disabilities are provided a free appropriate public education which emphasizes special education and related services designed to meet their unique needs and to assure that the rights of such children and their parents or guardians are protected." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 129 (2009) (internal marks omitted) (citing *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 367 (1985)). The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." *Hoeft v. Tuscan Unified Sch. Dist.*, 967 F.2d 1298, 1300 (1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). According to the IDEA, a FAPE is special education and services that-(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the school standards of the State educational agency, (C) include an appropriate preschool, elementary school, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.20 U.S.C. § 1401(9).

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1    elementary school, M.K. received some poor grades, had behavioral issues, and scored well on

2    state standardized achievement tests.  Plaintiff contends that M.K's elementary school records

3    show he was impulsive and that M.K.'s poor grades were due to an inability to pay attention and

4    difficulty completing or starting assignments, which according to Plaintiff are manifestations of

5    an individual with ADHD.  Defendant contends that M.K's elementary school records show that

6    he was capable of learning the subject matter and did do so as demonstrated by his results on

7    state standardized achievement tests, which assess knowledge of the subject matter, not ability or

8    IQ.  Moreover, Defendants also contend that his teacher's comments demonstrate that M.K. was

9    capable of doing the work, paid attention in class, but would not turn in homework and other

10   similar assignments, which accounted for his poor grades.

In the 2010-2011 school year, M.K. started high school at Acalanes High School

11   ("AHS").  M.K.'s grades were varied during his freshman year.  He earned passing and above

12   passing grades in some classes, but earned failing or incomplete grades in others.  On state

13   standardized achievement tests, M.K. did well and his results placed him in the average or

14   sometimes above average range in terms of knowledge of the subject matter for his grade level.

15   At the hearing, his high school teachers testified that M.K.'s poor grades were due to his failure

16   to complete or turn in homework and other assignments.  Plaintiff contends that this testimony

17   and his academic performance at AHS shows that his ADHD prevented him from benefiting in a

18   general education setting and that he was successful in quiet, structured non-distractible settings.

19   Defendant contends that his teacher's testimony and his academic performance demonstrate that

20   he was capable of and did learn the subject matter in a general classroom setting, and that his

21   poor grades were not due to a failure to learn the materials, but rather failure to turn in

22   assignments, which he was capable of doing and did so do when he wanted to.

During the time M.K. attended Acalanes, Student Study Teams (as with middle school)

24   met to offer general education supports. Plaintiff contends that while efforts were made such as

25   preferential seating and counseling, M.K.'s behavior and academics continued to deteriorate.

26   Plaintiff also contends that as reported by his then treating therapist, Dr. Emmanuel Weiss, M.K.

27   wants to succeed but he doesn't have the skills due to his executive functioning deficits

28

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1    associated with his ADHD. Dr. Weiss and the District's tests showed that M.K.'s behavior and

2    academic deterioration had an impact on how negatively M.K. started to perceive school.

3    Defendant contends that M.K. and his parents did not fully implement or take advantage of the

4    supports offered, such as study hall, peer tutoring, extra credit assignments, and weekly progress

5    reports from teachers.  Defendant also contends that when supports were used or when M.K.'s

6    parents monitored his homework or incentivized him to do his work, M.K.'s grades improved,

7    which showed such supports were capable of working; whereas when M.K. was not using the

8    offered supports or was not so monitored or incentivized to do his homework, he did not do or

9    turn in his assignments and his grades suffered.

10          On July 18, 2011, M.K., built and set off a "works bomb" on campus, during summer

11   school.  M.K. was suspended for the remainder of summer school, and it was recommended that

12   he be expelled.  On August 22, 2011, the District notified the M.K.'s parents that they would

13   recommend expulsion.  On September 13, 2011, M.K. was subject to an expulsion hearing.

14   M.K.'s suspension was extended pending the expulsion decision.  On October 07, 2011, M.K.

15   was expelled. At the hearing, M.K.'s father argued that M.K. had ADHD and that his behavior

16   was impulsive and that the District should consider this. Through the expulsion process, M.K.

17   was referred to Golden Gate Community School, which is an alternative education school

18   operated by Contra Costa County Office of Education. After one semester at Golden Gate,

19   M.K.'s parents removed him from that school and enrolled him in Fusion Academy, a private

20   school.  Plaintiff contends that after just 3 weeks at Fusion, M.K. received straight A's, was

21   taking advanced classes and his behavior improved significantly and his parents reported he

22   enjoyed the mostly 1:1 teaching style and that it was motivating and non distractible, and his

23   work completion increased and while he still struggled with behaviors issues, Fusion created

24   goals to address M.K.'s impulsivity and inattention as well as his behaviors as part of its

25   program.

26          In 2011, M.K.'s parents appealed the expulsion decision and filed a different special

27   education due process complaint against the District alleging that M.K. should have been

28   identified as needing assessment for special education due to his diagnosis with Attention

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1    Deficit/Hyperactivity Disorder ("ADHD") and found eligible for services under the IDEA.  The

2    District and M.K.'s parents agreed to settle that due process complaint.  Allegations regarding

3    identification of M.K. as a student who should be assessed for eligibility for special education

4    are not at issue in this present matter as they were resolved through the 2011 settlement

5    agreement.  Under the settlement agreement, the District paid for M.K. to continue attending

6    Fusion Academy for the remainder of the 2011-2012 school year (February –July) and the parties

7    agreed that the District would assess M.K. pursuant to an agreed upon plan and that an eligibility

8    determination would be made at an IEP Team Meeting.

9           As per the settlement agreement, the District evaluated M.K. to determine if he was

10   eligible for special education.   On April 25, 2012, the District held an IEP team meeting and,

11   based on its assessments, concluded that M.K. was not eligible for an IEP because he did not

12   require special education, but rather his ADHD could be addressed through accommodations in

13   the regular classroom program and provided M.K. with a Section 504 plan and placement at Las

14   Lomas High School.  Plaintiff contends that at the meeting, his parents contested the ineligibility

15   and requested continued placement at Fusion.  Defendant contends that while they noted their

16   disagreement with

17          In August 2012, M.K.'s parents notified the District that they were rejecting the offer of

18   placement at Las Lomas with a Section 504 Plan, and unilaterally placing M.K. at Fusion

19   Academy.  M.K. then filed a due process complaint with the Office Administrative Hearing

20   ("OAH") alleging that the District improperly denied him eligibility under the IDEA and seeking

21   reimbursement/placement at Fusion Academy.  After 11 days of hearing, the OAH found that

22   M.K. did not qualify for special education services under the Other Health Impairment Category

23   ("OHI").  During the hearing, the ALJ heard evidence regarding whether Fusion was an

24   appropriate placement for purposes of reimbursement and prospective placement.  Defendant

25   contends that given her decision that M.K. was not eligible for services under the IDEA, the

26   Administrative Law Judge ("ALJ") did not decide the issues of whether M.K. was entitled to

27   placement at Fusion or whether he was entitled to reimbursement for the cost of Fusion incurred

28

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1   to the date of the hearing.  Plaintiff contends that the ALJ did make findings regarding the

2   appropriateness of a placement at Fusion.

3          Main Disputed Factual Issues:

4       1.  Whether M.K.'s ADHD adversely affects his educational performance;

5       2.  Whether as a result of his ADHD, M.K. required special education and related services or

6           whether his ADHD could be addressed by modifications/accommodations in the regular

7           class setting?

8       3.  If found eligible, whether Fusion Academy is an appropriate placement for M.K.?

9       4.  If found eligible, whether M.K. is entitled to reimbursement for the costs of Fusion

10          Academy?

11      5.  Whether M.K. should be prospectively placed at Fusion?

12      **6.**  Whether M.K. should have an IEP designed to meet his unique needs?

13      **7.**  Whether the ALJ's decision should be overturned or whether deference should be given

14          to the AJL's decision and/or findings?

15  **3.  Legal Issues**
    *A brief statement, without extended legal argument, of the disputed points of law, including*
16  *reference to specific statutes and decisions.*

17          Determination of Eligibility Under the IDEA:  The parties agree that with respect to

18  whether M.K. was entitled to Special Education under the OHI category, the legal standard is as

19  follows: First, it must be shown that the student has limited strength, vitality, or alertness,

20  including a heightened alertness to environmental stimuli, resulting in limited alertness with

21  respect to the educational environment that is due to (1) chronic or acute health problems and (2)

22  adversely affects a child's educational performance.  34 CFR § 300.8(c)(9); Cal.Code. Regs, tit.

23  5, §3030.  Secondly, as a result of the OHI, the student must require special education, i.e.

24  specialized instruction and related services, that cannot be given through accommodation or

25  modification of the regular school program, in order to learn.  20 U.S.C. § 1401(3)(A); 34 CFR §

26  300.8(a)(1); Cal. Educ. Code § 560062(a) & (b); *Hood v. Encinitas Union School District,* 486

27  F.3d 1099, 1106 (9th Cir. 2007).

28

1   Plaintiff contends that alternatively, the ultimate question is not the child's category of

2   eligibility but whether M.K. is a child in need of special education in order to benefit from his

3   education.   *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High School*, 484 F.3d 1230,

4   1233 (9th Cir.2007) in which the Ninth Circuit called eligibility determinations "the most

5   important aspect of the IDEA. It is the lynchpin from which all other rights under the statute

6   flow."

7   Defendant, however, contends that eligibility under the IDEA does not simply turn on

8   whether M.K. would benefit from special education without regard to category of eligibility.  A

9   student cannot be found to be eligible under the IDEA, if he does not meet the eligibility criteria

10  of state and federal law.  Eligibility requires that because of the disability, here ADHD, M.K.

11  needs special education and related services, not that he would just benefit more from it.  If

12  M.K.'s ADHD can be addressed through modifications and accommodations in a general

13  education classroom, such that he can learn in that setting, he is not eligible under the IDEA for

14  special education services.  *Hood v. Encinitas Union School District,* 486 F.3d 1099, 1106-7 (9th

15  Cir. 2007).

16  Prospective Placement and Reimbursement of Costs for Fusion Academy:

17  If this Court finds that M.K. is eligible for special education under the IDEA, the parties

18  dispute whether this Court can hear and decide the issues of prospective placement and

19  reimbursement without first remanding the case to the ALJ for further findings.  Plaintiff

20  contends that the administrative record provides sufficient evidence for the Court to make its

21  own determination and that the ALJ's decision includes a review of the prospective placement

22  but the ALJ failed to apply 1. The correct legal standard and 2. misapplied the facts and the law

23  therefore the Court is in as good as a position to determine placement without the waste of time,

24  money and judicial resources to have this matter hear anew especially since M.K. is near

25  graduating. Moreover, the parties in this matter fully briefed the issue of Fusion and its

26  appropriateness as well as whether the ALJ had authority to award placement at Fusion

27  prospectively given it is a an uncertified non public school.

28

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1    Defendant, however, contends that the ALJ only made factual findings that M.K. was not

2  receiving specialized instruction or special education at Fusion in the context of its eligibility

3  determination and Plaintiff's argument that his instruction and performance at Fusion

4  demonstrated that he needs special education.  However, the ALJ expressly did not reach the

5  issues of placement and reimbursement and did not make legal findings or specific factual

6  findings under those legal standards, because she found it unnecessary given her conclusion that

7  M.K. was not eligible for special education.  The issues of placement and reimbursement involve

8  *inter alia* determinations of the appropriateness of Fusion as a placement, what FAPE for M.K.

9  entails, and whether M.K. is receiving specialized instruction uniquely designed to meet his

10  individual needs.  Those determinations involve matters of educational policy and under the

11  IDEA should first be decided by the educational expert – the ALJ – before being reviewed by the

12  Court.  Therefore, Defendant contends that if it finds eligibility, the Court should stay the case

13  and remand it back to the ALJ for further findings on prospective placement and reimbursement,

14  so that the Court can conduct a proper review of those issues.

15    The parties agree that the legal standard for reimbursement of a private placement is as

16  follows:

17
> The IDEA permits a district court to "grant such relief as the court determines is
> appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). We have held that "[p]arents have an
> equitable right to reimbursement for the cost of providing an appropriate
> education when a school district has failed to offer a child a FAPE." *W.G.*, 960
> F.2d at 1485. Even if a parent prevails on an IDEA claim, however,
> reimbursement is not automatic and the Supreme Court has repeatedly cautioned
> that "parents who unilaterally change their child's placement during the pendency
> of review proceedings, without the consent of state or local school officials, do so
> at their own financial risk." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*,
> 471 U.S. 359, 373–74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The Court has
> further explained that reimbursement for such expenses is appropriate *only* if (1)
> the school district's placement violated the IDEA, and (2) the alternative
> placement was proper under the statute. *Florence Cnty. Sch. Dist. Four v. Carter*,
> 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). "If both criteria are
> satisfied, the district court then must exercise its 'broad discretion' and weigh
> 'equitable considerations' to determine whether and how much, reimbursement is
> appropriate." *C.B.*, 635 F.3d at 1159 (quoting *Carter*, 510 U.S. at 15–16, 114
> S.Ct. 361). In making this determination, the district court may consider all
> relevant equitable factors, including, *inter alia*, notice to the school district before
> initiating the alternative placement; the existence of other, more suitable

18
19
20
21
22
23
24
25
26
27
28

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

placements; the parents' efforts in securing the alternative placement; and the level of cooperation by the school district. *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1088–89 (9th Cir.2008). These factors make clear that "[t]he conduct of *both* parties must be reviewed to determine whether relief is appropriate." *W.G.*, 960 F.2d at 1486 (emphasis added).

*Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058-59 (9th Cir. 2012).

In terms of *prospective placement*, the parties disagree on whether under the law the court can order placement at Fusion, due to the fact that the State of California has not certified Fusion as a non-public school qualified to provide special education services to student in California under the IDEA and state law.  Both parties agree that California Education Code §56505.2(a) prohibits a prospective placement at a non public school that is not certified by the State of California.

Plaintiff contends, however, that the California Department of Education has in place a process that allows school district's to seek a waiver. Whether the waiver process applies is purely a question of law which this Court can address without remand. This waiver provided under Education Code § 56101 (process for waiver of non-certified private school placement when required to provide FAPE) allows public school districts to have students placed in non certified private schools where such placement is required to meet the "free and appropriate public education" standards required by the IDEA. The District should be ordered to convene an IEP meeting and to offer Fusion under a reimbursement model through a waiver. The benefit of the IEP would be to provide academic, behavioral and social /emotional goals so that M.K. can finally have some modicum of success commensurate with his superior abilities. Notably, District's are authorized to offer a reimbursement model through settlement agreements even if the private school in question is not certified.

Defendant contends:

While a waiver of the certification requirement is available in some circumstances, this is not one of those circumstances because a waiver is not necessary to provide FAPE, especially given the other deficiencies in the Fusion program, such as the lack of credentialed special education teachers, or general credentialed teachers, and the lack of actual specialized instruction.  Additionally, seeking a waiver is a discretionary act by the District, and as such,

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

cannot be ordered by this Court.  Moreover, the District has lesser restrictive and costly publicly funded placements that could provide FAPE to M.K. should he need it, such that a waiver for Fusion is not required to provide FAPE.  34 C.F.R. §300.117; Cal. Educ. Code §§ 56364.2(b), 56365(a).  Therefore, if the Court determines that a prospective placement is necessary, the parties should be ordered to convene an IEP Team meeting to develop an appropriate placement to provide M.K. with FAPE.

### 4. Motions

There are no motions pending.  Plaintiff anticipates moving this Court to hear additional evidence pursuant to 1415(i)  While Defendant has not yet seen the additional evidence Plaintiff will seek to have admitted by the Court, it anticipates challenging the admission of additional evidence, and possibly asking the Court to admit other additional evidence in rebuttal.  Once the motion(s) for additional evidence are decided, the parties will file respective Motions for Summary Judgment, which in an IDEA case are "not a true summary judgment procedure [but] a bench trial based on a stipulated record." *Ojai Unified School District v. Jackson*, 4 F.3d 1467, 1472 (9th Cir.1993).

### 5. Amendment of Pleadings

The parties do not anticipate amendment of pleadings. However, Plaintiff reserves the right to amend its Complaint to allege systemic failures of the District for its policy, pattern and practice of not providing IEP's (special education under the IDEA) to Students with ADHD under the category of OHI as testified to by several school staff at the underling due process hearing.  With respect to such possible amendment and allegations, the District reserves its right to raise any and all defenses to any such amendment, allegations and/or cause of action.

### 6. Evidence Preservation

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

Parties agree that preservation of evidence is not an issue in this case.

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

7. **Disclosures**

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.*

Rule 26 (1)(A) generally does not apply to matters such as this that are based on an administrative record.

8. **Discovery**

Plaintiff asserts that no discovery is allowed in special education cases even where supplemental evidence is involved. Plaintiff asserts that there is strong case law stating that IDEA appeals cannot be turned into "a trial de novo". *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. Cal. 1993) stating the trial court must be careful not to allow additional evidence to change the character of the hearing from one of review to a trial de novo.

Plaintiff asserts that the traditional and long standing practice in IDEA appeals is to seek admission of additional evidence through Motions. *E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1006 (9th Cir. Cal. 2011)[2] stating the standard for additional evidence is if the additional evidence is relevant, non-cumulative, and otherwise admissible. See also *K.S. v. Fremont Unified Sch. Dist.*, 2007 U.S. Dist. LEXIS 67494, 18-19 (N.D. Cal. Sept. 4, 2007). Courts historically have heard motions from parties to supplement the administrative record. See *Van Duyn ex rel Van Duyn v. Baker Sch. Dist. No 02-1060*, 2005 WL 50130 at *10 (N.D. Cal 2004) court granted motion regarding parent testimony, expert testimony and teacher testimony; *Seattle Sch. Dist, No. 1 v. B.S.*, 82 F.3d 493(W.D.Wash. 1996) allowing expert testimony; *Ojai*, 4 F. 3d at 1473 admitting affidavits from two school district administrators; *Browell v. Lemahieu*, 127 F. Supp. 2d. 1117, 1121 (D. Haw. 2000) holding

---

[2] Undersigned counsel is lead counsel in E.M. Judge Jeremy Fogel in that case allowed supplementation of the record but no discovery and instead allowed the school district in that case to supplement with a sur-reply and responsive materials. This is also the case in *K.S. v. Fremont* USD in which undersigned counsel was before Judge Illston. Judge Illston likewise did not allow for discovery but instead allowed the District to file a sur-reply with materials that were responsive to the supplementation of Plaintiff's additional evidence admitted in that case. Both Judges respectfully declined to allow for discovery other than narrowly tailored supplementation of the administrative record.

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1    evidence could be submitted as attached to school District's motions; *Dept. of Educ. v. Cari Rae*

2    *S.*, 158 F. Supp. 2d 1190, 1195 (D. Haw. 2001) admitting a bill for services submitted by parents.

3    Defendant acknowledges that while discovery is generally not conducted in this type of

4    case, this does not mean however that it is prohibited, and Plaintiff does not provide any

5    authority stating that it is prohibited.  Rather, discovery can be allowed depending on the nature

6    of the additional evidence Plaintiff intends to ask the Court to admit.  See, e.g. Rodriguez v.

7    Indep. Sch. Dist. of Boise City, No. 1, 1:12-CV-00390-CWD, 2013 WL 943838 (D. Idaho Mar.

8    11, 2013).  Therefore, Defendant reserves its right to file a motion seeking discovery if after

9    reviewing the additional evidence Plaintiff seeks to have admitted, Defendant believes discovery

10    is necessary to enable it to properly rebut Plaintiff's additional evidence.

11    Plaintiff reserves right to dispute the Defendant's claim to a right to discovery and

12    requests an opportunity to fully brief the issue if the Court permits.

13    **9. Class Actions**

14    This matter is not a class action.

15    **10. Related Cases**

16    There are no related cases pending.

17    **11. Relief**
     *All relief sought through complaint or counterclaim, including the amount of any damages*
18    *sought and a description of the bases on which damages are calculated. In addition, any party*
     *from whom damages are sought must describe the bases on which it contends damages should be*
19    *calculated if liability is established.*

20    Parents seek compensatory educational remedies by way of reimbursement for the Fusion

21    Academy expenses they have incurred because of the Defendant's failures.  To date, Parents

22    have incurred $45,864.00 in Fusion Academy expenses, which is compromised of the cost of

23    tuition and a $240 fee.

24    Parents seek prospective placement at District expense either by contract or by way of

25    reimbursement so that Student M.K. can graduate from Fusion Academy.  From the date of this

26    Statement, Plaintiff has approximately four (4) 10 week sessions to complete in order to

27    graduate.  Each 10 week session costs approximately $13,600.

28

1    Plaintiff seeks attorneys fees.

2    **12.  Settlement and ADR**

3    *Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to*

4    *position the parties to negotiate a resolution.*

5    The parties have conferred and agreed to an Early Settlement Conference with a

6    magistrate judge.   The parties have an ADR phone conference to discuss this with the ADR

7    department on August 19th, 2013.

8    **13.  Consent to Magistrate Judge For All Purposes**
     *Whether **all** parties will consent to have a magistrate judge conduct all further proceedings*

9    *including trial and entry of judgment.* _____ YES   ___x_ NO

10   Defendant in this matter did not consent to a Magistrate.

11   **14.  Other References**
     *Whether the case is suitable for reference to binding arbitration, a special master, or the*

12   *Judicial Panel on Multidistrict Litigation.*

13   No, this matter is not suitable for binding arbitration, a special master or judicial panel.

14   **15.  Narrowing of Issues**

15   *Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate*

16   *issues, claims, or defenses.*

17   Given the nature of this case (appeal from administrative hearing), there are no issues that

18   can be narrowed through agreement or motion.

19   **16.  Expedited Trial Procedure**

20   *Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A. If all parties agree, they shall instead of this Statement, file an*

21   *executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

22   No.

23   **17.  Scheduling**

24   *Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

25   The Parties agree to the following schedule for resolution of this matter. :

26   1) The Parties will work together on preparation of the Administrative Record splitting

27   the costs for production;

28

Page **13** of **16**

2) Both parties may file a Motion to Supplement the Record.  Plaintiff requests that such motions be filed 20 days after the ADR session (either the Early Settlement Conference, or other ADR session if an Early Settlement Conference is not permitted), if such ADR is unsuccessful.  The supplemental evidence will be provided with these Motions and the local rules for filing oppositions and responses shall apply.  Each party reserves its right to in its opposition request the right to submit rebuttal additional evidence directly responsive to the evidence submitted by the opposing party, if the opposing party's evidence is admitted.  Each party also requests the right to submit sur-rebuttal evidence in response to the rebuttal evidence, and/or to move to strike that rebuttal evidence if it is not directly responsive to the admitted additional evidence.  Defendant would like to reserves the right to file a motion for discovery depending on the nature of the evidence Plaintiff seeks to have admitted.

3) Both parties agree that this case will be decided by the Court in what amounts to a bench trial based on a stipulated record.  The parties will file cross motions for "summary judgment" to present their arguments and evidence to the Court.  Parties will submit respective Motions for Summary Judgment 45 days after the ruling on the Motion(s) to Supplement the Record.  Oppositions will be due 14 days after the filing of the Motions for Summary Judgment and replies 7 days after filing of the Oppositions.  Prior to filing these Motions the parties will meet and confer on a hearing date and select a mutually agreeable date on which the Court is available and that meets the statutory notice requirements for this Court.

## 18. Trial
*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

This matter will be tried to the court on the basis of the administrative record, including any additional evidence, in addition to the parties' written arguments through Cross Motions for Summary Judgment.

## 19. Disclosure of Non-party Interested Entities or Persons
*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16. In addition, each party must restate in the case management statement the*

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

*contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

There are no entities known by either party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

### 20. Other

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

None.

Dated: August 14, 2013         **LEIGH LAW GROUP** also DBA EDULEGAL

/s/ Mandy Leigh
Counsel for Plaintiff
M.K., a minor, by and through his parents, B.K. and K.K.

Dated: August 14, 2013         **STUBBS & LEONE**

/s/ Katherine A. Alberts
Counsel for Defendant
Acalanes Union High School District

CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

1) The Parties will work together on preparation of the Administrative Record splitting the costs for production;

2) Both parties may file a Motion to Supplement the Record. Such motions must be filed no later than 20 days after the ADR session (either the Early Settlement Conference, or other ADR session if an Early Settlement Conference is not permitted), if such ADR is unsuccessful. The supplemental evidence will be provided with these Motions and the local rules for filing oppositions and responses shall apply. In its opposition, a party may

Page 15 of 16
*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*

1   request the right to submit rebuttal additional evidence directly responsive to the evidence

2   submitted by the opposing party, if the opposing party's evidence is admitted.  Each party

3   also may submit sur-rebuttal evidence in response to the rebuttal evidence, and/or move

4   to strike that rebuttal evidence if it is not directly responsive to the admitted additional

5   evidence.  Defendant reserves the right to file a motion for discovery depending on the

6   nature of the evidence Plaintiff seeks to have admitted.

7   3) The parties shall submit their respective Motions for Summary Judgment no later than

8   45 days after the ruling on the Motion(s) to Supplement the Record.  Oppositions will be

9   due 14 days after the filing of the Motions for Summary Judgment and Replies 7 days

10   after filing of the Oppositions.  Prior to filing these Motions the parties will meet and

11   confer on a hearing date and select a mutually agreeable date on which the Court is

12   available and that meets the statutory notice requirements for this Court.  *Plaintiff to submit revised order following*

13   IT IS SO ORDERED.  *mediation.*

14   Dated:  8/21/13

15                                                         UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

*JOINT CASE MANAGEMENT STATEMENT C 13-02083-JST*